IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

DON JUAN STAPLES, BEY,

    Plaintiff,

v.                                                                                  CIVIL ACTION NO. 2:23-cv-00386

LIEUTENANT T. PARSONS, et al.,

    Defendants.

**PROPOSED FINDINGS & RECOMMENDATION**

This matter is assigned to the Honorable John T. Copenhaver, Jr., Senior United States District Judge, and is referred to the undersigned United States Magistrate Judge for submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 3.) Pending before the Court is the June 22, 2023 *Motion to Dismiss the Complaint* filed jointly by the four named Defendants in this civil action: Lieutenant T. Parsons ("Parsons"), Sargent Kevin Allen ("Allen"), W.M. Tanzey ("Tanzey"), and the South Charleston Police Department ("SCPD") (collectively, the "Defendants"). (ECF No. 5.) In lieu of filing a response to Defendants' joint *Motion*, the pro-se Plaintiff in this matter, Don Juan Staples, Bey ("Plaintiff")[1] filed a *Motion to*

---

[1] As U.S. Magistrate Judge Cheryl Eifert noted in a strikingly similar case, Plaintiff's legal name is Don Juan Staples, and "Bey"—a suffix commonly adopted by adherents to the "sovereign citizen" doctrine—"is not and has never been a part of Plaintiff's legal name." *Staples v. Wilson*, 3:23-cv-00377, ECF No. 16 (S.D. W. Va. Aug. 9, 2023), *adopted*, ECF No. 17 (S.D. W. Va. Sept. 1, 2023) (citing *Bey v. Childress*, 2:23-cv-00400, ECF No. 11 at 1 n.1 (S.D.W. Va. May 22, 2023), *adopted*, ECF No. 29 (S.D. W. Va. Sept. 12, 2023); *Staples v. Navarro*, No. 2:22-cv-00526, ECF No. 35 at 4 n.2 (S.D.W. Va. Nov. 17, 2022)). *See also* Section III, *infra*. Consequently, for uniformity and clarity, the undersigned adopts herein Judge Eifert's reference to this Plaintiff by his legal surname, Staples. *Wilson*, ECF No. 16 at 1 n.1.

*Amend the Complaint* on June 22, 2023. (ECF No. 6.) Taking the parties' interrelated *Motions* up together, it is respectfully **RECOMMENDED**, for the reasons explained more fully herein, that Defendants' *Motion to Dismiss* (ECF No. 5) be **GRANTED**, Plaintiff's *Motion to Amend* (ECF No. 6) be **DENIED**, and this civil action be **DISMISSED**, with prejudice, from the Court's docket.

## I.   BACKGROUND

On May 12, 2023, Plaintiff—proceeding pro se—initiated this civil action under 42 U.S.C. § 1983, naming the four moving Defendants: Parsons, Allen, Tanzey, and the SCPD, and asserting that the Defendants violated his right to be free from unreasonable searches and seizures pursuant to the Fourth Amendment to the U.S. Constitution. (ECF No. 1.) In support of his claim, Plaintiff asserts the following allegations of fact:

> On September 13, 2021, [at] approximately 11:00 p.m., Plaintiff was traveling along the Kanawha Turnpike towards Spring Hill when he noticed a police car traveling faster than normal headed in the opposite direction. As the plaintiff looked in his rear-view mirror, he noticed the police vehicle making a U-turn at the top of the hill near Bridge Valley Community and Technical College. The department issued vehicle has now positioned itself behind the Plaintiff's vessel[2] and proceeds to tail behind it. Defendant was present and observed Plaintiff engaged in this activity.
>
> Without provocation or justification, Defendant(s) signals Plaintiff to pull over by sounding the department issued vehicle siren. The plaintiff pulled his vessel over alongside the Kanawha County School bus station and waited for the officer to approach the vessel. Defendant, Lt. T. Parsons stated a crime had taken place in the area, but the plaintiff did not fit the description; however, [Parsons] indicated that he smelled marijuana. The plaintiff attempted to explain to defendant that there was no evidence of marijuana inside the vessel, but the defendant proceeded to ask the plaintiff to provide a driver's license. The plaintiff produced his tribal documents and the defendant walked back to the department issued vehicle and read over the tribal documents, which lasted approximately an

---

[2] Plaintiff's reference to a "vessel" is simply a "sovereign citizen" term for an automobile; Plaintiff has since conceded that he was operating a motor vehicle. (*See, e.g.*, ECF No. 12 at 2.)

hour and a half. During this time approximately six department issued vehicles arrived on site with a total of ten officers. The defendant returned to the plaintiff's vessel and returned the tribal documents and then asked the plaintiff to exit the vessel. The plaintiff advised the defendant that he is exiting the vessel under duress. As plaintiff was talking to defendant Allen, defendant Parsons begins to search the vehicle without plaintiff's consent and found a gun in the glove compartment of the vessel. The plaintiff advised defendant Parsons that that gun in particular was listed in his Trust. Defendant Parsons stated the gun was reported stolen and advised the plaintiff he was under arrest and that his truck would be towed, which deprived Plaintiff of his rights under the Constitution or laws of the United States.

*Id.* at 1-2. Based upon these assertions of fact, Plaintiff "seeks compensatory and punitive damages in the amount of $2,110,000.00" pursuant to 42 U.S.C. § 1983. *Id.* at 2.

In response to Plaintiff's *Complaint*, the Defendants filed a joint *Motion to Dismiss* on June 8, 2023, seeking dismissal of this civil action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[3] (ECF No. 5.) Defendants argued that, with the exception of Defendant Parsons, Plaintiff did not set forth any allegations regarding what specific conduct by each named Defendant that is alleged to have violated the Fourth Amendment. *Id.* at 7. Further, Defendants argued that Plaintiff's *Complaint* failed to demonstrate a Fourth Amendment violation, because Plaintiff did not allege that the stop resulted in an illegal search and seizure; nor did Plaintiff allege that Defendants lacked

---

[3] In support of their *Motion*, Defendants attached a *Field Case Report Narrative* purportedly created by the SCPD on the date of the stop, which they claim actually occurred "on May 20, 2021, *not* September 13, 2021" as alleged in Plaintiff's *Complaint*. (*See* ECF No. 5-1.) Defendants assert that the *Field Case Report Narrative* constitutes a matter of public record and is therefore a proper subject for the Court's judicial notice. (ECF No. 5 at 2.) A court may consider information in the public record, including dispositions of criminal cases, when reviewing a motion to dismiss pursuant to Rule 12(b)(6). *Hall v. Virginia*, 385 F.3d 421, 424 n.3 (4th Cir. 2004). Regardless, out of an abundance of caution, the undersigned has *not* considered the Field Case Report Narrative in making any findings of fact or conclusions of law with respect to the legal sufficiency of Plaintiff's *Complaint* herein. Furthermore, because the undersigned concludes that Mr. Staples failed to state a plausible claim for relief, Defendants' other arguments set forth in their *Motion to Dismiss*—including their qualified immunity and state statutory defenses—need not be addressed herein.

probable cause to initiate the stop, extend the stop, conduct the search, or to arrest him. *Id*. Finally, Defendants argue that Plaintiff's claim against the SCPD fails because there are no factual allegations from which the Court could draw the inference of a policy, custom, or practice to support a claim against a municipality itself pursuant to *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690 (1976). [4]

Plaintiff did not contest Defendants' *Motion to Dismiss*. In lieu of a response, Plaintiff filed a *Motion to Amend the Complaint* on June 22, 2023 (ECF No. 6), to which he attached a document captioned *Plaintiff's Amended Complaint and Memorandum of Law in Support* (the "first proposed amended complaint") (ECF No. 6-1). Plaintiff explained that his first proposed amended complaint "maintains the counts and allegations against the same defendants from the original complaint," and that the purpose of the proposed amendment was merely to correct the alleged "arrest date" when the events giving rise to the instant civil action occurred, "from September 13, 2021 to the correct arrest date of May 20, 2021." *Id.* at 1.

Plaintiff also added allegations intended to address "the specific conduct violating the plaintiff's right, the time and the place of that conduct, and the identity of the responsible party(ies)." (ECF Nos. 6 at 1; 6-1 at 1.) Specifically, the proposed amended complaint sets forth the following allegations of fact:

---

[4] Defendants sought to dismiss on other grounds, including that "Plaintiff's claims are also barred by West Virginia statute," because "the damages Plaintiff alleges in this action arise from his commission of a felony" and § 55-7-13d(c) of the West Virginia Code bars recovery "[i]n any civil action" under such circumstances. As this argument relies upon the *Field Case Report Narrative*, however, it is thus outside the scope of this *Proposed Findings and Recommendation. See* footnote 1, *supra*.

4

> Plaintiff was traveling along Kanawha Turnpike, when Defendant Lieutenant T. Parsons pulled Plaintiff over stating that a crime had been committed in the area. Defendant, Lt. T. Parsons demanded driver's license, proof of insurance, etc. Plaintiff provided Defendant, Lt. T. Parsons, with travel documents. Defendant, Lt. T. Parsons, and Sgt. Kevin Allen took approximately an hour to read over Plaintiff's travel documents, once finished the Defendants, Lt. T. Parsons and Sgt. Kevin Allen demanded Plaintiff to exit the automobile stating that they smelled marijuana. Defendants, Lt. T. Parsons, and Sgt. Kevin Allen threatened Plaintiff with jail time if he did not exit the automobile, and Plaintiff complied under duress. Defendants, Lt. T. Parsons, and Sgt. Kevin Allen did not find any marijuana in the automobile but located a 45-special. ***McDonald v. City of Chicago, 561 U.S. 742 (2010),*** was a landmark decision of the Supreme Court of the United States that found that the right of an individual to "keep and bear arms", as protected under the Second Amendment and is thereby enforceable against the states. Defendants, Lt. T. Parsons, and Sgt. Kevin Allen had Plaintiff's automobile towed and arrested Plaintiff. Defendant, Lt. T. Parsons escorted Plaintiff to the precinct and forced Plaintiff to submit to fingerprinting and booking photograph. Defendant, W.M Tanzey kidnapped Plaintiff and took him to South Central Regional Jail overnight.

(ECF No. 6-1 at 2 ¶¶ 6-14.) Furthermore, Plaintiff added pages of sovereign-citizen-esque "legalese" to the first proposed amended complaint, further obscuring rather than clarifying his claims. (*See* ECF No. 6-1 at 3-7.) Defendants did not respond to Plaintiff's *Motion to Amend the Complaint*, and the time for further briefing having expired pursuant to Local Rule 7.1(a)(7) of the Court's Local Rules of Civil Procedure, both motions are ripe for review.

On September 25, 2023, Defendants filed a *Supplement* in support of their *Motion to Dismiss* (ECF No. 11), citing to U.S. Magistrate Judge Cheryl Eifert's *Proposed Findings and Recommendation* in the strikingly similar matter of *Staples v. Wilson*, 3:23-cv-00377, ECF No. 16 (S.D. W. Va. Aug. 9, 2023), *adopted*, ECF No. 17 (S.D. W. Va. Sept. 1, 2023). *See* herein at 2 n.1, *supra*. As Defendants pointed out in their *Supplement*,

5

Plaintiff's factual allegations in the *Wilson* matter were "nearly identical to the [initial] Complaint filed in the case at bar." (ECF No. 11 at 2-3.) Specifically, Plaintiff alleged the following in *Wilson*, as summarized by Judge Eifert:

> Staples alleges that, on December 21, 2021, he was traveling on I-64 East towards Charleston, when he was pulled over by Officer Evan Wilson of the Hurricane Police Department. (ECF No. 1 at 1, 12 at 2). Officer Wilson informed Staples that he pulled him over because he noticed Staples had swerved. (ECF No. 1 at 1). Staples responded that it may have looked like he swerved, but he was only trying to get out of the way of Officer Wilson's police cruiser, which had been behind Staples. (Id.). Officer Wilson asked Staples for his driver's license, and Staples handed him a "tribal identification card." (Id. at 2). Officer Wilson went back to the police cruiser for fifteen minutes and then returned to Staples, stating he smelled marijuana in Staples's vehicle, and asked Staples to step out. (Id.). Officer Wilson handcuffed Staples, while a second officer searched the vehicle and found a firearm which belonged to Staples's "consort," whom is later identified as Staples's wife. (Id., ECF No. 12 at 2). Officer Wilson then placed Staples in the police cruiser and took him to the Hurricane Police Department. (ECF No. 1 at 2).

*Wilson*, 3:23-cv-377, ECF No. 16 at 4.

Moreover, in *Wilson*, just as here, the Plaintiff also attempted to later amend his Complaint, and his motion for leave to amend therein "contained the same bizarre documents and arguments that are contained in the filing in the case at bar." *Id.* at 3 ¶ 9. Noting that Plaintiff's claims in *Wilson* were dismissed with prejudice, Defendants advocated for adoption of Judge Eifert's "legal findings and recommendations" from that matter in the case at hand, on the grounds that they are "clearly applicable to this similar type of action filed by this same *pro se* Plaintiff." *Id.* at 4 ¶ 12. Defendants concluded that, "[i]n short, it is time for this frivolous litigation to come to an end," and reiterated their request that "the Plaintiff's Complaint, and 'Amended Complaint' against these Defendants should be dismissed, with prejudice." *Id.* at 4.

Subsequently on October 10, 2023—after Judge Eifert entered her August 9, 2023 *Proposed Findings and Recommendations* in *Wilson*—Plaintiff filed a document in the instant action captioned "*Objection to the Defendants' Motion to Dismiss and Memorandum of Law in Support of the Objection*" (the "second proposed amended complaint"). (ECF No. 12.) While Plaintiff titled it as an "Objection," the substance of this document appears to be Plaintiff's attempt at a *second* proposed amended complaint. *See generally id.* The factual allegations therein, however, are noticeably more sparse than the allegations set forth in the initial *Complaint* and the first proposed amended complaint; in fact, aside from mere conclusions and recitations of the elements of Plaintiff's § 1983 claim, Plaintiff's second proposed amended complaint only sets forth *three* total allegations of fact: (1) that Plaintiff "was traveling along Kanawha Turnpike" at approximately 11:00 P.M. on May 20, 2021; (2) that "Defendants pulled Plaintiff over without any suspicion of Plaintiff committing a crime . . . randomly . . . without probable cause; and (3) Defendants illegally searched and seized the plaintiff's vehicle. (ECF No. 12 at 2 ¶¶ 1-4.) As a result of these barebones factual allegations, the second proposed amended complaint only compounded the same uncontested deficiencies that Defendants raised in their *Motion to Dismiss* Plaintiff's initial *Complaint*—including Plaintiff's vague use of the collective "Defendants" such that each Defendant is unable to determine what alleged acts or omissions on their part individually gave rise to Plaintiff's § 1983 claim. (*See* ECF No. 5 at 11.)

Following the factual allegations comprising the second proposed amended complaint, this document next set forth a section titled "Legal Argument and Objections," wherein Plaintiff briefly addressed—without citations to applicable supporting authority—several of the issues raised in Defendants' *Motion to Dismiss*. For instance,

7

Defendants argued in their *Motion to Dismiss* that dismissal of the SCPD is proper because Plaintiff did not allege any unconstitutional policy, practice, or other action taken by the SCPD itself, and the theory of vicarious liability pursuant to the common-law theory of *respondeat superior* does not extend to § 1983 claims. (ECF No. 5 at 11.) In response, Plaintiff argued that he should be granted leave to file the second amended complaint on the grounds that "[t]he *Monell* claim is a crucial component of this case, as it addresses the alleged policies, practices, and customs of the [SCPD] that contributed to the violations of Plaintiff's Constitutional Rights." (ECF No. 12 at 4 ¶¶ 8-9.) Plaintiff's second proposed amended complaint, however, is completely devoid of any indication as to what the SCPD's purported "policies, practices, and customs" actually were—or how these unspecified policies, practices, or customs are alleged to have contributed to the alleged constitutional violations. *See id.*

In light of the liberal standard afforded to Court filings made by parties proceeding without counsel, *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), the undersigned will construe Plaintiff's *Objection* and the second proposed amended complaint therein as a supplement to Plaintiff's *Motion for Leave to Amend the Complaint* (ECF No. 6), and will consider both proposed amended complaints. (ECF Nos. 6-1; 12.) In light of the foregoing procedural posture, the issue before the Court is whether Plaintiff should be granted leave to amend his *Complaint* with the second proposed amended complaint, or the matter be dismissed.

## II. <u>LEGAL STANDARD</u>

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may test the legal sufficiency of a complaint by way of a motion to dismiss. *Glessner v. Chardan, LLC*, 22-cv-3333, 2023 WL 4351331, at *2 (D. Md. July 5, 2023) (citing *In re*

*Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017)). A 12(b)(6) motion posits that, even if the facts alleged by the plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Rule 8(a)(2), which provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8(a)(2) is to ensure a plaintiff's complaint provides the defendant with "fair notice" of the plaintiff's claims and the "grounds" for plaintiff's alleged entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). To survive a motion under Rule 12(b)(6) under this standard, a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." Id. at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for all civil actions[.]") (quotation omitted); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).

A plaintiff need not include "detailed factual allegations" in order to satisfy this plausibility standard. *Twombly*, 550 U.S. at 555. Further, federal pleading rules "do not countenance dismissal of a complaint for an imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam). Nevertheless, the rule demands more than "bald accusations" or "mere speculation." *Painter's Mill Grille, LLC v. Bro*wn, 716 F.3d 342, 350 (4th Cir. 2013) (citing *Twombly*, 550 U.S. at 555). A complaint is plainly insufficient when it provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Rather, the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, which suffices "even if . . .

9

[the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

In reviewing a 12(b)(6) motion, the Court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); accord *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). However, the trial court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

When a plaintiff is proceeding without counsel, "[a] document filed pro se is to be liberally construed[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Because such deference is given to pro se complaints, the Court should grant leave to amend where a pro se complaint can be remedied by an amendment, to allow the development of a potentially-meritorious case. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Gordon v. Leeke*, 574 F.2d 1147, 1151-53 (4th Cir. 1978) (explaining that a district court should allow pro se plaintiffs a reasonable opportunity to develop pleadings.); *Coleman v. Peyton*, 370 F.2d 603, 604 (4th Cir. 1965) (stating that a pro se plaintiff should be given an opportunity to particularize potentially viable claims). Nonetheless, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court. *See Weller v.*

10

*Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009) (outlining pleading requirements under Rule 8 of the Federal Rules of Civil Procedure for "all civil actions").

The mandated liberal construction afforded to pro se pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so; however, a district court may not rewrite a complaint to include claims that were never presented, construct the plaintiff's legal arguments for him, or "conjure up questions never squarely presented" to the court. *Randolph v. Baltimore City*, 14-3176, 2014 WL 5293708, at *1 (D. Md. Oct. 14, 2014), *aff'd sub nom. Randolph v. New Tech*, 588 Fed. App'x 219 (4th Cir. 2014) (citations omitted). Thus, the Court may deny leave to amend when "the amendment would be futile," such that "it is clearly insufficient or frivolous on its face" or "if the claim it presents would not survive a motion to dismiss." *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010); *Save Our Sound OBX, Inc. v. N.C. Dep't of Transp.*, 914 F.3d 213, 228 (4th Cir. 2019).

### III. ANALYSIS

Staples brings this action under 42 U.S.C. § 1983. A claim under 42 U.S.C. § 1983 has two essential elements: there was a violation of the plaintiff's rights under the Constitution and laws of the United States, and the alleged violation was committed by a person acting under color of state law. Crosby v. City of Gastonia, 635 F.3d 634, 639 (4th Cir. 2011). Defendants assert that Staples has not stated a plausible claim for any constitutional violations. The undersigned agrees.

Importantly, the undersigned takes judicial notice that, as Defendants pointed out and as this Court has noted on previous occasions, Plaintiff Staples is a so-called "sovereign citizen," and has appeared before this Court in several civil actions, all of which

involved arguments, vocabulary, and tactics associated with sovereign citizen doctrine. *See, e.g., Staples v. Childress*, 2:23-cv-00400; *Staples v. Navarro*, 2:22-cv-526; *Staples v. Yates*, 2:23-cv-429; *Staples v. Wilson*, 3:23-cv-377.

Staples has been warned on previous occasions that his sovereign-citizen claims are meritless and improper. Moreover, Staples has already been notified on two prior occasions that his § 1983 claim is grounded on a theory that lacks any basis in applicable law, and that proposed amendments substantially mirroring those in the instant action were soundly rejected by this Court. As Magistrate Judge Omar J. Aboulhosn found on August 17, 2023, in a strikingly similar civil action brought by the same Plaintiff as in the instant action, Mr. Don Juan Staples, Bey:

> [Plaintiff Staples] . . . commits a significant portion of his . . . pleadings to commerce-related arguments and terminology that have no bearing on the issues presented to this Court, with the emphasis being that he cannot be held accountable by any government agency, state or federal, as he possesses "sovereign title" to himself alone (See ECF No. 23 at 4, ¶11). *See United States v. Brown*, 669 F.3d 10, 19 (1st Cir. 2012) (noting that the defendant's "belief system appears most akin to the so-called sovereign citizen movement whose proponents believe they are not subject to federal or state statutes or proceedings, reject most forms of taxation as illegitimate, and place special significance in commercial law"); *United States v. Mitchell*, 405 F.Supp.2d 602, 605 (D.Md. 2005) (explaining arguments by sovereign citizens).

*Staples v. Childress*, 2:23-cv-00400, ECF No. 27, at 12 (S.D. W. Va. Aug. 17, 2023), *adopted*, 2:23-cv-0400, ECF No. 29 (S.D. W. Va. Sept. 12, 2023). The allegations in the *Childress* matter, as summarized by Judge Aboulhosn in the following paragraph, substantially mirror many of the allegations set forth by Mr. Staples in the case at hand:

> The Plaintiff has filed a complaint against the Defendants under 42 U.S.C. § 1983 and 18 U.S.C. §§ 241, 242, 245. (ECF No. 1) The Plaintiff alleges that on January 20, 2023, while driving in his vehicle, Defendant Childress initiated his emergency lights and signaled to the Plaintiff to pull over,

> which he did. (Id. at 2) Defendant Childress advised the Plaintiff that he stopped him because he had an incorrect license plate, and asked for the Plaintiff's driver's license and registration, which the Plaintiff presented. (Id.) Defendant Childress returned to his cruiser with the Plaintiff's "travel documents and vessel insurance" and then went back to the Plaintiff accompanied by Defendant Hill. (Id.) Defendant Hill advised the Plaintiff to step out of the vehicle. (Id.) The Plaintiff tried to explain that "he was traveling as a Moorish American National Indigenous Aboriginal American" but was ignored. (Id.) Defendant Hill advised that he smelled marijuana and asked the Plaintiff if there was marijuana in his vehicle or if he had a medical marijuana license. (Id.) The Plaintiff states that "under duress", he "stepped out of the vessel and attempted to provide Defendants Hill and Childress with his paperwork", but they "continued to violate [his] human rights." (Id.) Defendant Childress then searched the Plaintiff's vehicle and stated he found cocaine, handcuffed the Plaintiff and put him in the rear seat of the cruiser. (Id.) The Plaintiff also alleges that Defendant Childress found a .38 special handgun that is registered to the Plaintiff's spouse. (ECF No. 16-1 at 4, ¶14) The Plaintiff states he sat in the cruiser for thirty minutes until Defendant Daber arrived with a test kit "which deprived Plaintiff of his rights under the Constitution or laws of the United States." (ECF No. 1 at 2)

*Staples v. Childress*, 2:23-cv-00400, ECF No. 27, at 2-3. Based upon these allegations, Magistrate Judge Aboulhosn expressly found that Plaintiff's sovereign citizen claims were frivolous and should be dismissed. *See id.*

Following the same playbook, in *Staples v. Wilson*, Plaintiff Staples alleged the following, as summarized by Magistrate Judge Eifert:

> Staples alleges that, on December 21, 2021, he was traveling on I-64 East towards Charleston, when he was pulled over by Officer Evan Wilson of the Hurricane Police Department. (ECF No. 1 at 1, 12 at 2). Officer Wilson informed Staples that he pulled him over because he noticed Staples had swerved. (ECF No. 1 at 1). Staples responded that it may have looked like he swerved, but he was only trying to get out of the way of Officer Wilson's police cruiser, which had been behind Staples. (Id.). Officer Wilson asked Staples for his driver's license, and Staples handed him a "tribal identification card." (Id. at 2). Officer Wilson went back to the police cruiser for fifteen minutes and then returned to Staples, stating he smelled marijuana in Staples's vehicle, and asked Staples to step out. (Id.). Officer

13

> Wilson handcuffed Staples, while a second officer searched the vehicle and found a firearm which belonged to Staples's "consort," whom is later identified as Staples's wife. (Id., ECF No. 12 at 2). Officer Wilson then placed Staples in the police cruiser and took him to the Hurricane Police Department. (ECF No. 1 at 2).

*Wilson*, 3:23-cv-377, ECF No. 16 at 4. Importantly, Judge Eifert's August 9, 2023 *Proposed Findings and Recommendation* in *Wilson* rejected Mr. Staples's proposed amended complaint with nearly identical changes as those identified above with respect to Plaintiff's October 10, 2023 second proposed amended complaint in the instant matter. In *Wilson*, for instance, Plaintiff's amended complaint alleged that Officer Wilson "pulled Plaintiff over without any suspicion of committing a crime." *Wilson*, 3:23-cv-00377, ECF No. 16 at 9-10. Judge Eifert explained to Plaintiff in *Wilson* that strategically omitting factual details from the initial complaint in this context does not alleviate the uncontested deficiencies raised by both the defendants in *Wilson* and the Defendants in the instant matter; as Judge Eifert stated, "[t]he facts supplied in Staples's original Complaint make clear that Officer Wilson had sufficient cause to stop Staples." *Id.* at 9-10.

      Here, just as in *Wilson*, the facts supplied in Plaintiff's initial *Complaint* make clear that Defendants had sufficient cause to initiate a traffic stop, once again directly contradicting Plaintiff's subsequent claim in the proposed amendment that Defendants pulled Plaintiff over without any suspicion of Plaintiff committing a crime. Specifically, Plaintiff's initial *Complaint* alleges that, once pulled over, Parsons explained that that Mr. Staples's truck matched the description of a stolen vehicle. Plaintiff does not dispute that his truck matched the description of a stolen vehicle. Under *Terry v. Ohio*, 392 U.S. 1, 30 (1968), an officer may conduct a brief investigatory stop where the officer has reasonable suspicion that criminal activity may be afoot. *United States v. Perkins*, 363 F.3d 317, 321

14

(4th Cir. 2004). A *Terry* stop must be based on "at least a minimal level of objective justification," but the standard for reasonable suspicion is less demanding than for probable cause. *Id*. Just like the traffic stop in *Wilson*, therefore, Plaintiff has not plausibly stated a Fourth Amendment violation for an unlawful stop. After her thorough analysis of the legality of the traffic stop in *Wilson*, Judge Eifert went on to explain in painstaking detail the legal basis for her recommendation of dismissal, including a thorough analysis of the subsequent search of the vehicle, and arrest. *Wilson*, 3:23-cv-0377, ECF No. 16 at 9-13. The undersigned **FINDS**, in accordance with Judge Eifert's findings in *Wilson* which are incorporated herein by reference, that because the initial *Complaint* and Plaintiff's first and second proposed amended complaints do not alleviate the uncontested deficiencies identified in Defendants' *Motion to Dismiss*, Mr. Staples has not plausibly alleged a claim under 42 U.S.C. § 1983 based upon a violation of the Fourth Amendment's prohibition of unreasonable searches and seizures.

Furthermore, because Judge Eifert's analysis applies equally to the matter at hand, with such similar factual allegations, a detailed repetition of the same analysis is simply not an appropriate use of the Court's limited resources.[5] Simply put, by continuing in his

---

[5] For completeness of the record, the undersigned affirmatively **FINDS** that the allegations in Plaintiff's initial *Complaint* do not state a plausible constitutional violation in the officer's continuation of the stop, subsequent search of the vehicle, and arrest of the Plaintiff. *See United States v. Avagyan*, 164 F. Supp. 3d 864, 882 (E.D. Va. 2016), *aff'd sub nom. United States v. Ghazaryan*, 685 F. App'x 222 (4th Cir. 2017). Plaintiff alleges that the officer should have ended the encounter after seeing that Plaintiff did not match the description of the auto-theft suspect. But the officer was not required to ignore evidence of criminal activity simply because the purpose of the stop—the similarity of Plaintiff's vehicle to a truck reported as stolen—was resolved. Plaintiff's initial *Complaint* reveals that he did not present a state-issued driver's license—a requirement for operating a motor vehicle under West Virginia law. *See* W. Va. Code § 17B-2-1 ("No person, except those hereinafter expressly exempted, may drive a motor vehicle upon a street or highway in this state . . . unless the person has a valid driver's license issued pursuant to this code"). There is no question that these circumstances presented an objectively reasonable basis for the officer's further inquiry. Further, Plaintiff's initial *Complaint* alleged that the officer searched the vehicle after explaining that he detected the odor of marijuana. *See United States v. Lewis*, 606 F.3d 193, 198 (4th Cir. 2010) (finding probable cause justifying a vehicle search when an officer "smelled the odor of marijuana emanating from the vehicle"). Moreover, the Plaintiff's own factual allegations set forth in his initial *Complaint* indicate that he was operating an automobile without a driver's license—a misdemeanor

pattern of pursuing strikingly similar claims that he knows are improper, Plaintiff threatens the Court's fundamental ability to manage its docket and to secure "the just, speedy, and inexpensive determination of every action and proceeding" at the heart of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 1.

The Court has the authority to restrict vexatious litigants from repeatedly filing frivolous matters without first obtaining leave of court. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-50 (1991). *See also Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 817 (4th Cir. 2004) ("Undoubtedly, the All Writs Act, 28 U.S.C. § 1651(a) (2000), grants federal courts the authority to limit access to the courts by vexatious and repetitive litigants like Cromer."). While "use of such measures against a *pro se* plaintiff should be approached with particular caution and should remain very much the exception to the general rule of free access to the courts," a prefiling injunction is warranted in the "exigent circumstances" where a litigant engages in "continuous abuse of the judicial process by filing meritless and repetitive actions." *Id.* at 817-18. Such "exigent circumstances" unquestionably exist when, as Mr. Staples did in the instant matter, a plaintiff files a deficient pleading with the Court after a substantively-identical pleading containing the same flaws is dismissed. *See Emrit v. Bd. of Immigr. Appeals*, 2:22-cv-110, 2022 WL 3594518, at *1 (S.D. W. Va. Aug. 23, 2022).

The language employed by Judge Aboulhosn in the *Childress* matter and Judge Eifert in the *Wilson* matter was quite clear that Plaintiff's legal theories were frivolous and merited dismissal. Because Plaintiff has chosen to continue burdening the Court with

---

punishable by up to six months of incarceration under West Virginia Code § 17B-2-1. As soon as the officer confirmed that Plaintiff was driving without a license, the officer had probable cause to make an arrest. Simply put, Plaintiff's claims are patently frivolous—as this Court has explained to him previously, at length.

baseless filings, the applicable legal authority empowers this Court to enter an appropriately-tailored injunction to prevent Mr. Staples from further abusing the judicial system with repetitive, duplicative, and frivolous lawsuits. *See id.* Because Plaintiff is proceeding pro se, however, out of an abundance of caution the undersigned recommends that Plaintiff be warned expressly by Court Order that pursuing further vexatious litigation in this Court could subject him to sanctions.

## IV. <u>RECOMMENDATION</u>

For the foregoing reasons, it is respectfully **RECOMMENDED**, for the reasons explained more fully herein, that Defendants' *Motion to Dismiss* (ECF No. 5) be **GRANTED**, Plaintiff's *Motion to Amend* (ECF No. 6) be **DENIED**, and this civil action be **DISMISSED** from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., Senior United States District Judge. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (mailing) from the date of the filing of this Proposed Findings and Recommendation to file with the Clerk of this Court specific written objections identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. A copy of any objections shall be provided to Judge Copenhaver and to each opposing party, except that, if any opposing party is represented by counsel, that party's copy should be provided to his or her counsel.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Fourth Circuit Court of Appeals. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).

The Clerk is **DIRECTED** to file this Proposed Findings and Recommendation, to mail a copy of the same to Plaintiff at his address of record, and to transmit a copy to counsel of record.

ENTER: February 8, 2024

_____
Dwane L. Tinsley
United States Magistrate Judge